HOOVERSON HEIGHTS PUBLIC SERVICE DISTRICT

*v.*

THE PUBLIC SERVICE COMMISSION OF

WEST VIRGINIA AND CITY OF FOLLANSBEE, *etc.*

(No. 14710)

Decided July 8, 1980.
Rehearing Denied October 7, 1980.

*Kauffelt & Kauffelt and T.D. Kauffelt,* for relator.

*Robert W. Geake, Public Service Commission,* for Public Service Com'n.

*Pinsky, Barnes, Watson, Cuomo & Hinerman and Frank Cuomo, Jr.,* for City of Follansbee.

CAPLAN, JUSTICE:

This is an appeal by Hooverson Heights Public Service District, hereinafter referred to as Hooverson, from an order of the West Virginia Public Service Commission. In an order dated December 22, 1978 the Commission granted a rate increase to Combined Water Works and

Sewage System Board of the City of Follansbee, a public utility, for sewer service to Hooverson. Upon the refusal of the Commission to reconsider the case, Hooverson prosecuted this appeal. We affirm.

The appellant, Hooverson, assigns the following two errors: (1) the Commission erred in approving a tariff that was substantially higher than the general service tariff and therefore was illegally discriminatory and in violation of Code 24-3-2; and (2) the Commission erred in not making a finding of fact on the issue of illegal discrimination and violation of Code 24-3-2. *W.Va. Code*, 24-3-2 provides:

> No public utility subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation, for any service rendered or to be rendered, than it charges, demands, collects, or receives from any other person, firm or corporation for doing a like and contemporaneous service under the same or substantially similar circumstances and conditions.

> It shall be unlawful for any public utility subject to the provisions of this chapter to make or give any undue or unreasonable preference or advantage to any particular person, company ... or locality ... in any respect whatsoever ...

The Hooverson Heights Public Service District was created in 1960 for the purpose of establishing a public body to plan, construct, operate and maintain a public water system and a sewage system to serve the unincorporated community of Hooverson Heights. Subsequent to the installation of the water system, the growth in the number of residences in the area manifested a need for a central sewer system to replace individual home treatment systems. Hooverson contacted the city with respect to having their residents' sewage treated at the city's secondary sewage treatment plant. Negotiations were held, and in 1968, the city and Hooverson entered

into an agreement. This agreement provided for the connection of the appellants' proposed system to the city's system and for the treatment of its residents' sewage at the city's treatment plant. The parties mutually agreed that Hooverson was to pay $.33 per thousand gallons of sewage and it was further agreed that Hooverson would introduce approximately 75,000 gallons of sewage per day into the system. The parties also agreed that in the event the city's cost of operation of the treatment plant was substantially increased and it became necessary to request an increase in rates, the $.33 rate would be changed to conform to the rate allowed by the Public Service Commission. This 1968 agreement was modified by mutual consent of the parties in 1971. The latter agreement provided for a different method of measuring and calculating the amount of sewage transmitted by Hooverson and treated by the city. The $.33 per thousand gallons figure remained in effect. The 1971 agreement further provided that this new method of measuring sewage would be in effect until either party gave notice of its intent to terminate such method and the 1968 agreement would then again be in effect.

The city has approximately 1,254 customers within its borders whose sewage is treated by its secondary sewage treatment plant. Hooverson Public Service District has 824 customers whose sewage is introduced into the city's secondary sewage treatment plant. Thus, approximately 60% of the customers using this treatment plant are residents of Follansbee, while approximately 40% are customers of Hooverson who reside outside the city.

Having reason to believe that the appellant was introducing more sewage into the system than was being paid for, notice was given to the appellant that the 1971 agreement was being terminated. being unable to resolve their differences, the city filed a new tariff with the commission seeking a rate increase for service to Hooverson from the $.33 to $.74 per thousand gallons. The city alleged that its cost of service for operating the subject treatment plant had more than doubled from the time of the 1968 agreement.

The matter was heard on May 3, 1978, at which time the city appeared and presented its evidence in support of its requested increase. Hooverson, the party whose rates might be increased, intervened. After hearing evidence of cost of service presented by the city and the commission staff, together with other evidence, the commission entered its order of December 22, 1978, permitting an increase from $.33 to $.58 per thousand gallons of sewage treatment.

While the appellant questioned the cost of service evidence presented by the city and the commission staff, its assignments of error deal exclusively with the discrimination issue. Basically, Hooverson contends that it is a customer of the utility and that, under *W.Va. Code* 24-3-2, it must be treated the same as any other customer. In fact, Hooverson is not like any other customer. The city was under no obligation to serve it and consented to do so only after negotiations and an agreement as to the rights and obligations were entered into. Hooverson is the only contractee and wholesale buyer of service from the city. It, in turn sells the service to its 824 customers, all of whom live in the Hooverson Heights Public Service District, outside of the city. The city has agreed to permit Hooverson to avail itself of its facilities and services for a contracted price. Without the contract, the city would not be obligated to make its sewage treatment plant available to Hooverson's 824 customers.

The Court said, in *Preston County Light and Power Company v. Renick*, 145 W.Va. 115, 113 S.E. 2d 378 (1960):

Though as a general rule public utilities have the right to enter into contracts between themselves or with others, free from the control or supervision of the state, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties, the principle is firmly established that all contracts made by a utility relating to the public service must be deemed to be entered into in contemplation of the exercise by the state of its regulatory power whenever the public interest may make it

necessary; and when such contracts are the subject of statutory regulation, no contract for service may be made by a public utility except as provided by law, although an otherwise valid contract is binding on the parties to it until a departure from such contract has been directed by competent authority.

See also *United Fuel Gas Co. v. Battle*, 153 W.Va. 222, 167 S.E. 890 (1969); 73 C.J.S. Public Utilities, § 5; and 64 Am. Jur. 2d, Public Utilities, § 81.

The appellant makes much of the fact that it is paying higher rates to have its sewage treated than it would pay under the rate structure applied to city's individual customers. Contrary to its assertion, Hooverson is a different type customer. It is a "wholesaler", having 824 customers who purchase services from it. It being the only such customer the city has, it is entirely within its authority to enter into a contract under the terms of which it could charge a negotiated amount for service, so long as such contract was not unconscionable or oppressive and did not impair the obligation of the utility to discharge its public duties.

The evidence presented at the hearing fully supported the necessity for the increased charges. The appellant did not refute the charges but instead maintains that it was discriminated against in favor of the city's other customers. We do not agree.

In conclusion, we find that the subject contract was neither unconscionable nor oppressive and is valid. The evidence as to cost of service was substantially uncontradicted and we cannot say that the ruling of the Commission was wrong. We find that *W.Va. Code*, 24-3-2 has no application to this proceeding by reason of the fact that the service rendered Hooverson is not rendered under "the same or substantially similar circumstances and conditions" rendered city's other customers. *W.Va. Code* 1931, 24-3-2.

Inasmuch as Hooverson was not a customer being served under "the same or substantially similar circum-

stances and conditions" as the city's other customers, we discern no necessity for making findings as to discrimination. Therefore, the second assignment of error is without merit.

*Affirmed.*